UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| JESUS GARCIA | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. M-05-59 |
| | § | |
| NISSAN MOTOR CO., LTD., | § | |
| NISSAN NORTH AMERICA, INC., | § | |
| BERT OGDEN MCALLEN MOTORS, | § | |
| INC. | § | |
| | § | |

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**

This is a products liability case arising out of an automobile accident that occurred on January 24, 2003. On February 18, 2005, Defendant Nissan North America, Inc. removed this case to the Southern District of Texas based on diversity jurisdiction. Now pending before this Court is Plaintiff's motion to remand (Doc. 10). For the reasons stated below, Plaintiff's motion to remand is DENIED.

**I. BACKGROUND**

Plaintiff Jesus Garcia ("Plaintiff") sues for injuries his son, Jonathan Garcia, sustained from an automobile accident while driving a 2002 Nissan Altima 2.5S.[1] Plaintiff sues Nissan Motor Co., LTD ("Defendant Nissan LTD."); Nissan North America, Inc. ("Defendant Nissan North

---

[1] On November 16, 2001 Plaintiff purchased a 4-cylinder 2002 Nissan Altima 2.5 S from Local Defendant. (Doc. 4 at 6). On January 24, 2003, Plaintiff's son, Jonathon Garcia, while driving the car in San Antonio, lost control of the vehicle. The vehicle went into a skid, sliding into a utility pole with the passenger-side rear door hitting the pole. *Id.* at 7. The pole intruded into the backseat area of the vehicle. *Id.* Although Jonathan Garcia was wearing his seat belt, the seat back in his driver's seat yielded rearward, allowing his head to move into the back seat area, where he sustained a severe brain injury from hitting the pole and/or intruding structures. *Id.* Plaintiff claims that a stronger seat back or a side-curtain airbag would have prevented his brain injury. *Id.*

America"); and Defendant Bert Odgen McAllen Motors ("Local Defendant"). Plaintiff seeks recovery based on theories of strict liability and negligence.[2] Specifically, Plaintiff argues that the Altima in question was defective in that: (1) the vehicle did not have electronic stability control; (2) it was not crashworthy in foreseeable side impact collisions; (3) it lacked a side-curtain airbag; (4) its seat back was defectively designed and was too weak; and (5) the seat lacked a shoulder bolster. (Doc. 4 at 6).

Plaintiff originally filed suit on January 5, 2005, in the 93rd Judicial District Court of Hidalgo County, Texas. *Id.* On February 18, 2005 Defendant Nissan North America, claiming improper joinder of Local Defendant, removed the case pursuant to diversity jurisdiction (28 U.S.C. § 1332 and 28 U.S.C. 1441). (Doc. 1). Plaintiff disputes improper joinder of Local Defendant and now moves to remand. (Doc. 10). In determining whether there is diversity jurisdiction, the only issue before this Court is whether the local Defendant, Bert Odgen McAllen Motors, has been improperly joined.[3]

## II. ANALYSIS

### A. Improper joinder

In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981). This is a "heavy" burden and the court must resolve contested facts, as well

---

2  Plaintiff is Jonathon Garcia's legal guardian.
3  It is undisputed that all other requirements of diversity jurisdiction have been met.

as ambiguities and uncertainties in controlling state law, in favor of the plaintiff. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999). It is well established in the Fifth Circuit that it is "insufficient that there be a mere theoretical possibility of recovery;" to the contrary, there must "at least be arguably a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of improper joinder." *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003). Accordingly, if there is any possibility that the plaintiff has stated a cause of action against the non-diverse defendant, this Court must conclude that joinder of the non-diverse defendant was and is proper and the case must be remanded to state court. *Sid Richardson Carbon and Gasoline Company v. Interenergy Resources, Ltd.*, 99 F.3d 746, 751 (5th Cir.1996).

A court may resolve the issue of whether a plaintiff has a reasonable basis for recovery under state law in one of two ways. The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. Furthermore, there are cases, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *See Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)(citations omitted). A summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. *Id.* A court may not use improper joinder as an excuse to pre-try the merits of the case. *Id.*

### B.  Plaintiff's Claims Against Local Defendant

Plaintiff alleges three claims against Local Defendant.  First, Plaintiff alleges that Local Defendant sold the vehicle without side-curtain airbags despite "knowing the dangers inherent in vehicles that lacked side-curtain airbags."  (Doc. 4 at 6).  Second, Plaintiff alleges that Local Defendant sold the car without electronic stability control, despite its knowledge of the availability and benefits of electronic stability control.  *Id.*  Lastly, Plaintiff argues that Local Defendant failed to train its salespersons to educate consumers regarding these issues, and failed to point out the dangers inherent in the Altima, or to recommend the purchase of a vehicle equipped with side-curtain airbags and electronic stability control.  *Id.*

### C.  Texas Tort Reform Act

Plaintiff's action is governed by recently-enacted chapter 82 of the Texas Civil Practices and Remedies Code.[4]  In 2003, the Texas Legislature added section 82.003, which limits the ability of a plaintiff to recover against a nonmanufacturing seller in a products liability action.  Section 82.003(a) provides that "[a] seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves . . ." any one of several enumerated exceptions.  *See* TEX. CIV. PRAC. & REM. CODE § 82.003(a).

Chapter 83 of the Code defines a "products liability action," as:  "any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories." TEX. CIV. PRAC. & REM. CODE §82.001(2).  It

---

4 The aforementioned section applies to actions filed on or after September 1, 2003.

is undisputed that Plaintiff's strict liability and negligence causes of action against the Local Defendant are subject to the Texas Tort Reform Act.  *See* TEX. CIV. PRAC. & REM. CODE §82.001(3)('Seller' means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component or part thereof.).   Accordingly, the Local Defendant has no liability absent Plaintiff pleading and, ultimately, proving one or more of the applicable exceptions.[5] Plaintiff claims two exceptions, §§ 82.003(a)(6) and 82.003(b), that provide grounds for Plaintiff's strict liability claim against Local Defendant.  If Plaintiff has a possibility of recovery under either theory, then this Court must remand.  *See e.g. Gray v. Beverly Enterprises-Mississippi, Inc.* , 390 F.3d 400, 412 (5th Cir. 2004).

### *(i). Section 82.003(a)(6)*

Plaintiff argues that he has a possibility of recovery under TEX. CIV. PRAC. & REM. CODE §82.003(a)(6).  That section provides that a non-manufacturing seller may be liable when "the seller actually knew of a defect to the product at the time the seller supplied the product and the claimant's harm resulted from the defect."   TEX. CIV. PRAC. & REM. CODE § 82.003(a)(6).  The language of section 82.003(a)(6) clearly requires actual knowledge of the defect on the part of the seller.  *Reynolds v. Ford Motor C* o., 2004 Dist. LEXIS 27106, *8 (N.D. Tex. 2004).  Plaintiff's original petition asserts that the Local Defendant had actual knowledge of two defects in the 2002 Altima at the time it supplied the product and that the defects resulted

---

5 In addition to arguing two exceptions to 82.003, Plaintiff also argues that he has pled claims or theories against Local Defendant not covered by Section 82.003 but which would provide him a remedy against said Defendant. However, the plain language of 82.003 precludes these "extra-82.003" claims as it applies to "any action" under "any...theory".

in harm to Plaintiff's son    First, the lack of a side-curtain air-bag and, second, the lack of electronic stability control.  Specifically, Plaintiff claims that when the Local Defendant sold the vehicle, it knew that side-curtain airbags were available on some vehicles but not on others, and knew that vehicles with these features were much safer, and further knew about the dangers inherent in vehicles that lacked side-curtain airbags; further, Plaintiff claims that Local Defendant also knew the benefits of electronic stability control.  In addition to these two alleged defects, Plaintiff claims that the Local Defendant failed to train its salespersons to educate consumers regarding these issues, and failed to point out the dangers without such features, or recommend the purchase of a vehicle with these features.  (Doc. 10 at 5).

Plaintiff provides evidence of a press release on Nissan's website that states the 2002 Nissan Altima had available "side-impact supplemental airbags and side curtain supplemental airbags for head protection"  and claims this is evidence that Local Defendant was aware that the vehicle sold to Plaintiff was not equipped with the safer side-curtain airbags.  Plaintiff also offers the affidavit of Michael R. Cowen showing that Nissan put information on its website that side-curtain airbags were an available option in the 2002 Nissan.  Plaintiff asserts that the fact that side-curtain airbags were an available safety option, and that the vehicle in question was not equipped with side-curtain airbags is evidence that Local Defendant knew that the vehicle was defective and lacked side curtain airbags when it sold the vehicle.  The Court disagrees.

This Court concludes that a nonmanufacturing seller's knowledge of a condition in or of a product without actual knowledge that the condition renders the product defective is insufficient

to satisfy the Section 83.002(a)(6) exception. A nonmanufacturing seller is not liable for a product's defects simply because it could have or should have known that a product was defective. *See Reynolds v. Ford Motor Co.*, 2004 Dist. LEXIS 27106, *8 (N.D. Tex. 2004).

Plaintiff claims Local Defendant "actually knew of defects in the 2002 Altima at the time it supplied the [sic] product; *it knew that the vehicle lacked electronic stability control and a side-curtain airbag* ." (Doc. 4 at 9)(emphasis added). While it is undisputed that Local Defendant knew the vehicle lacked side-curtain airbags and electronic stability control, Plaintiff has failed to show that Local Defendant knew that lack of these features rendered the vehicle defective. The latter does not follow, *a priori*, from the former. Under Texas Law, a product is not defective merely because it could be safer. *Weakley v. Fischbach & Moore, Inc*, 515 F.2d 1260, 1267 (5th Cir. 1975). It is one thing to show that the defendant might have designed a safer product; quite another to show that the product he did design was unreasonably dangerous. The defendant is not obliged to design the safest possible product, or one as safe as others make or a safer product than the one he has designed, so long as the design he has adopted is reasonably safe. *Id*; citing *W. Prosser,* The Law of Torts §96 at 645 (4th ed. 1971). While Local Defendant certainly had knowledge that a car with side-impact airbag or stability control could or would be safer than a car without these features, this is not equivalent to knowing that the lack of these features rendered the product defective.

Defendant Nissan North American offers the Court the affidavit of Mario Bonaccorso ("Mr. Bonaccorso"), the general manager for Local Defendant. Mr. Bonaccorso states that he was

unaware that the lack of side curtain air bags or electronic stability control made a vehicle unsafe or unreasonably dangerous.  (Doc. 28 at 4).[6]  In addition, Defendant Nissan North America offers the affidavit of Mike Kennedy, the chief financial officer of Local Defendant, as evidence that Local Defendant did not have actual knowledge of any alleged defect in the 2002 Altima.[7] Plaintiff does not claim to have any evidence which would refute or cast doubt on either Mr. Bonaccorso's or Mr. Kennedy's affidavits.[8]

   Plaintiff relies on R*eynolds v. Ford Motor Co.* , WL 2870079, * 3 (N.D. Tex. 2004) and *McDonald v. Ford Motor Co.* , 2004 U.S. Dist. LEXIS 27252 (S.D. Tex. 2004) to show that the case must be remanded. *Reynolds* and *McDonald* both involved Ford SUV rollover cases. In *McDonald* , the Plaintiff alleged "that the failure of Defendants, with full knowledge of the

---

6 Mr. Bonaccorso states:

> As the General Manger for Bert Odgen McAllen Motors, Inc, it is my job to train and supervise the salesman. I was the General Manager for Bert Odgen McAllen Motors, Inc. in November 2001, when Jesus Garcia purchased his Nissan Altima. As General Manager, I am generally familiar with our inventory of vehicles, as well as the options available on different models. Bert Odgen McAllen Motors, Inc. sells vehicles manufactured by BMW, in addition to vehicles manufactured by Nissan.
>
> In November 2001, many of the vehicles our customers purchased lacked side curtain air bags and electronic stability control. I was not aware then, and have no reason to believe now, that a vehicle is unsafe or unreasonably dangerous merely because it lacks side curtain airbags and electronic stability control. I was not aware in November 2001 that anyone even claimed that a vehicle is defective simply because it lacks side curtain air bags or electronic stability control. (Doc. 28 at 4).

7 Mr. Kennedy states:

> Bert Ogden McAllen Motors, Inc. did not know of any alleged defect to the product at the time it supplied the subject 2002 Nissan Altima. At the time Bert Ogden McAllen Motors, Inc. sold the subject 2002 Nissan Altima, it had no actual knowledge of the defect alleged in the Plaintiff's original petition to have caused harm to Plaintiff. (Doc. 4, att. 4 at 4).

8  In analyzing whether a party has been improperly joined, a court has discretion to pierce the pleadings and look to undisputed summary judgment-type evidence. *See Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996); *Smallwood v. Ill. Cent. R.R. Co.* , 352 F.3d 220 (5th Cir. 2003).

design defects of the Ford Explorer, to give adequate warning and instructions rendered the Explorer unreasonably dangerous as marketed." *McDonald v. Ford Motor Company*, 2004 U.S. Dist. LEXIS 27252 at * 5.  While Plaintiff did not use the terms "actually knew" or "actual knowledge," the court construed the factual allegations in Plaintiff's favor. *Id.* at *7.  Since the defendant did not offer an affidavit or other summary judgment type evidence denying actual knowledge, the *McDonald* court understandably refused to exercise its discretion in piercing the pleadings pursuant to *Smallwood*.  The case was remanded as Defendant had failed to met the "heavy burden"of proving improper joinder. In *Reynolds,* which relies upon *McDonald*, Ford and the local seller defendant removed the case to federal court arguing diversity jurisdiction and claiming improper joinder.  The district court remanded the case back to state court because there was competing evidence that the local defendant had actual knowledge that the vehicle was prone to roll over.  The Court could not conduct a *Smallwood* inquiry as there were disputed facts of material importance and the Court is not permitted to pre-try these disputed facts.  Accordingly, remand was required.

The Court does not find Plaintiff's arguments compelling.  In the present case, Plaintiff has not produced any evidence to controvert the affidavits of Local Defendant averring that it had no actual knowledge of a defect in the product at the time it supplied the product. As stated above, Plaintiff has only shown what is undisputed --  that Local Defendant knew the vehicle lacked side-curtain airbags and electronic stability control.  This is not enough.  Were the Court to accept Plaintiff's reasoning, a nonmanufacturing seller such as a car dealership would be strictly liable anytime technology existed to make the product safer, without any further showing.  This

is inconsistent with the Texas statutory scheme that imposes liability against a nonmanufacturing seller only when there is some some additional culpability on of the part of the nonmanufacturing seller. Even viewed in a light most favorable to the Plaintiff, Plaintiff has failed to carry its burden as to the applicability of 83.002(a)(6). Therefore, the Court finds that Plaintiff has no reasonable expectation of recovery against Local Defendant Bert Odgen McAllen pursuant to 82.003(a)(6).

*(ii). Section 82.003(b)*

Plaintiff also alleges that Local Defendant may be liable under TEX. CIV. PRAC. & REM. CODE 82.003(b). Section 82.003(b) states:

> This section [referring to Section 82.003 generally] does not apply to a manufacturer or seller whose liability in a products liability action is governed by Chapter 2301, Occupations Code. In the event of a conflict, Chapter 2301, Occupations Code, prevails over this section.

TEX. CIV. PRAC. & REM. CODE §82.003(b) (2005). Plaintiff correctly notes that Section 2301.461(b) of the Occupations Code provides:

> (b) Notwithstanding the terms of any franchise or any other law, a manufacturer or distributor shall reimburse the dealer for any loss incurred by the dealer, including legal fees, court costs, and damages, as a result of the dealer having been named a party in a product liability action, except for a loss caused by the dealer's:

>   (1) failure to comply with an obligation described by Subsection (a);
>
>   (2) negligence or intentional misconduct; or
>
>   (3) modification of a product without the authorization of the manufacturer or distributor.

TEX. OCC. CODE §2301.461 (2005).  Plaintiff argues that the Local Defendant's liability is governed by Chapter 2301 of the Texas Occupations Code and is, therefore, not subject to the limitation of § 82.003.  In support of his argument, Plaintiff offers the Court legislative history as well as various statements made by Texas State Senator Armbrister interpreting the statute. (Doc. 10).

The Court concludes however that Plaintiff's argument that the Legislature chose to single out otherwise innocent franchised automobile dealers for strict liability for selling defective automobiles is unpersuasive.  The plain reading of the relevant statutes does not support Plaintiff's argument.  The Court agrees with Defendant Nissan North American that nothing in § 2301.461 purports to govern the liability of a franchised automobile dealer to a retail customer. This section merely governs the liability of a manufacturer or distributor to a franchise dealer. *See* TEX. GOV'T CODE §312.002 (words generally shall be given their ordinary meaning).

Although Plaintiff cites to some arguably favorable legislative history, Texas law provides that unless a statute is ambiguous, courts must follow the meaning of the statute's clear language. *See Facility Ins. Corp. v. Employers Ins. of Wausau*, 357 F.3d 508, 516 (5th Cir. 2004); *In re Universal Seismic Assocs., Inc.*, 288 F.3d 205, 207 (5th Cir. 2002)(When the plain reading of a

statute precludes a party's interpretation, no amount of legislative history, be it ever so favorable, can redeem it.).  Accordingly, the Court concludes that Plaintiff has no reasonable possibility of recovery against the Local Defendant under Section 82.003(b).

### (iii).  Alleged Causes of Action Outside of § 82.003 Exceptions

Plaintiff also alleges that Local Defendant was negligent in selling the 2002 Altima when it knew it lacked electronic stability control and side-curtain airbags and was further negligent by failing to warn Plaintiff that he could purchase vehicles that contained these features.  In addition, Plaintiff claims Local Defendant was further negligent in failing to train and educate its salespersons regarding the benefits and necessity of side-curtain airbags and electronic stability control (Doc. 4 at 6).  Plaintiff alleges that Local Defendant voluntarily undertook to provide safety-related information regarding the Altima to Jesus Garcia.  *Id.*  This voluntary undertaking created a duty of care under Restatement (Second) of Torts §§ 323 and 324A.  According to Plaintiff, Local Defendant negligently breached this duty by failing to provide information regarding side-curtain airbags and electronic stability control and failing to recommend that Jesus Garcia purchase a vehicle with such safety features.  *Id.* at 8-9.

This Court has previously concluded that any theories of recovery plead against a non-manufacturing seller must fall within one of the seven exceptions to § 82.003, regardless of whether such allegations otherwise state a viable claim under Texas law. *See Casas v. The Tire Corral, Inc.*, Civil Action No. M-04-123, slip op. at 6 (March 31,2005); *Alonso v. Maytag Corp.*, 2005 WL 405295, *3 (N.D. Tex. 2005)(Because § 82.001 specifically includes strict products

liability and negligence causes of action as products liability actions, both causes of action are governed by the provisions set forth in Chapter 82.).  Construing section 82.003 (b)'s reference to the Texas Occupational Code as a "mechanism for negligence claims"  would be inconsistent with the statute.  *Rubin v. Daimlerchrysler Corp.*, 2005 WL 1214605, *10 (S.D. Tex. 2005).  The statute defines "products liability action" specifically to include negligence theories.  TEX. CIV. PRAC. & REM. CODE §82.001(2).   The Court therefore concludes that Plaintiff's negligence claims are precluded by the plain meaning of § 82.003.

### D.  Other Considerations

Plaintiff  cites *Smallwood* for the proposition that if the Court, in connection with its determination on the remand issues, were to determine that the automobile was not defective due to the lack of certain safety features, then that defense would inure to all defendants, and must be resolved at the state court level.  (Doc. 10 at ).  The Court does not make such a determination.  Accordingly, the *Smallwood* "common defense" remand is not triggered.  *See Rainwater v. Lamar Life Ins. Co.*, 391 F.3d 636, 638 (5th Cir. 2004).

### III.  CONCLUSION

The Court concludes that section 82.003 of the Texas Civil Practices and Remedies Code precludes Plaintiff's recovery on his claims of strict liability and negligence against Local Defendant Bert Ogden McAllen.  The Court therefore holds that Local Defendant has been improperly joined and such defendant is hereby **DISMISSED**.  Because all remaining parties are diverse and the requisite amount in controversy has been satisfied, this Court has subject matter

jurisdiction in this present case. Plaintiff's motion to remand for lack of jurisdiction is therefore **DENIED**.  (Doc. 10).

SO ORDERED this 30th day of March, 2006, at McAllen, Texas.

*(signature)*
Randy Crane
United States District Judge